UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

HAROLD PETTIT, )
    Plaintiff, )
     )
vs. )
     )
UNITED STATES OF AMERICA )
    Defendant. )

-FILED-
JUL 24 2013
ROBERT N. TROOVICH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

2:13CV253

COMPLAINT FOR MEDICAL NEGLIGENCE

Plaintiff, by counsel, states as his cause of action against the defendant as follows:

1/ This is an action arising under the Federal Torts Claim Act, 28USC 2671 *et seq.*

2/ The plaintiff has resided and continues to reside in Crown Point, Indiana since his discharge from the United States Army in 1946.

3/ The plaintiff has complied with all administrative requirements of the FTCA and a final denial of claim by the Regional Counsel of the Department of Veterans Affairs was mailed to the plaintiff and counsel on March 28, 2013.

4/ The plaintiff's claim was in the amount of $400,000.00 for negligence and personal injury.

5/ The plaintiff elects to pursue his claim before this Court.

6/ On June 7, 2012 plaintiff was transported from the Adam Benjamin VA clinic in Crown Point, Indiana to the Jesse Brown VA Hospital(JBMC) in Chicago, Illinois.

7/ After examination in the JBMC ER plaintiff was admitted to the acute medicine floor on or about 4:00 pm on June 7, 2012. Pre-admission ER notes endorsed cognitive impairment. The unobserved fall, resulting in a fractured hip which required open reduction/fixation, occurred on June 8, 2012 on or about 9:00pm.

8/ Plaintiff was 90 years old with prior medical conditions and medications which contributed to ambulatory instability. He used a cane to stabilize his gate. His main complaint was "thought I was having a stroke."

9/ Prior to his fall, employee nurses, employee physicians, agent physicians as in medical students, residents in various years of study were advised and noted in the plaintiff's hospital records that the plaintiff's prior condition required active medicines, pre-admission which contribute to ambulatory instability, and he stated that his left elbow pain was due to an at home fall and he was given new medicines which also were known to contribute to ambulatory instability and he was determined to be cognitive impaired and forgetful. There was no assistive devices at his beside just before he fell. He was 90 years of age.

10/ During the evening of June 7, 2012, Nurse L. Jayakumar, RN rated his Morse fall score at 60 and high risk and he was assigned the yellow arm band signifying "high risk" for falls. However, high risk interventions were not instituted. The high risk yellow arm band indicator was never removed prior to his in-patient fall. At 1:43 am on June 8, Nurse M.Manieson,RN noted his high risk for falls. At 4:00pm on June 8, Nurse C.Mendoza had to assit him to bathroom and his gait was unsteady and he used a cane to ambulate.

2

11/ At 10:53 pm on June 8, 2012 Nurse L. Rivera RN entered an addendum note stating he had fallen and that he was forgetful. A Neuro Follow-up note by H.Patel, Neuro Resident on June 9 at 11:08 am acknowledged the fall occurred on the way to the bathroom and that assistive devices were not at his beside prior to the fall. Prior to his fall hospital records reveal that there was no consideration or assessment of his advanced age and its relevance to fall prevention implementations.

12/ The VHA NCPS 2004 Toolkit for fall preventions stated specific individual interventions for high fall risk patients e.g.:

a/ high fall-risk room set up; it was not done

b/ medication review with risk of fall specific to patient; it was not done

c/ use of hip protectors to prevent hip fractures; it was not done; notwithstanding patient statement of recent at home fall.

d/ gait mobility problems acknowledged; place bedside commode next to bed at night; extreme low bed position; nothing was done

e/ cognitive/memory problems acknowledged but nothing done.

f/ mobility aids at bedside; not done

g/ bed alarm; not done before but done after he broke his hip

13/ Beginning with the initial determination of high risk of fall determined by the Morse scale, and thereafter until the fall on or about 9:30pm, June 8, 2012, JBMC never instituted the "high risk" interventions stated in the high risk protocols adopted by the Department of Veteran's Affairs.

14/ There was no consideration or assessment regarding plaintiff's advanced age.

3

15/ Defendant by its actions and omissions of its employees, agents, including health care providers responsible for assessing specific inpatient fall prevention and recommending and implementing and supervising fall prevention, intervention protocols at Jesse Brown MC:

1/ Did not assess and/or accurately assess his advanced geriatric condition;

2/ Did not assess or accurately assess his medications and age regarding propensity for falls;

3/ Did not act upon known cognitive impermanent;

4/ Did not act upon stated pre-admission fall resulting in his elbow pain;

5/ Did not provide an assistive device at bedside prior to fall when it was known that his gait was unsteady and he used a cane to ambulate;

6/ Did not institute high risk interventions pursuant to VA fall prevention protocols when a patient Morse score requires high risk interventions.

16/ As a proximate cause of defendant's failure to institute high risk interventions of prescribed Veteran Affairs protocols, Harold Pettit fell in his room suffering a broken hip which required surgical repair at Jesse Brown VAMC

17/ As a proximate cause of defendant's failure to supervise and recommend and implement specific fall intervention protocols for this 90 year old inpatient from high risk facts known, prior to his fall, Mr. Pettit suffered the loss of independent living; became disabled to a mobilized wheel chair; required full assisted living at St Anthony's in Crown Point Indiana. He has and will continue to incur expenses of this care and caretaking.

4

18/ Mr. Pettit who prior to the negligent treatment at the defendant's facility was living free, in his own home, with his dog and able to drive his car but as a proximate cause of the defendant's negligence has lost all of this and is confined to a nursing home. As a consequence has suffered the loss of self-esteem.

19/ Mr. Pettit suffered pain from the fall and continues to have residual pain associated with his broken hip.

20/ Plaintiff's counsel has attached as Exhibit A, his affirmed declaration with certificate of merit by a Nurse, as required by Illinois Statutes 735 ILCS 5/2-622 and Illinois jurisprudence which requires a nurse's opinion of negligent care when the malpractice and injury was proximately caused by nursing negligence.

Wherefore, plaintiff prays for judgment against the defendant in the amount of $400,000.00 together with costs of this action.

841 North Park Ave
Indianapolis, IN 46202
317-698-5629
hafsten@sbcglobal.net

Raymond J. Hafsten, Jr.
Attorney for Plaintiff