UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

HAROLD PETTIT,                          )
                                        )
            Plaintiff,                  )
                                        )
     v.                                 )          CIVIL NO.  2:13cv253
                                        )
UNITED STATES OF AMERICA,               )
                                        )
            Defendant.                  )

OPINION AND ORDER

This matter is before the court on an "Appeal of Magistrate Judge Decision", filed on

September 2, 2014, by the plaintiff, Harold Pettit ("Pettit").  The United States of America

("Government") filed is response brief on September 26, 2014, to which Pettit replied on October

2, 2014.

On December 29, 2014, this court granted Pettit's request for an *in camera* review of

certain documents.  The Government submitted documents on January 28, 2015.  However, after

determining that the submission did not cover all the documents requested, the court, on

February 17, 2015, ordered the Government to submit additional documents.   The Government

submitted these documents on March 19, 2015.

After reviewing the documents the court has determined that Pettit's appeal will be

denied and the decision of the Magistrate Judge will be affirmed.

Discussion

This case arises under the Federal Tort Claims Act ("FTCA"), as a result of Pettit's fall at

the Jesse Brown Veterans Affairs Medical Center (JBVAMC) in Chicago in July 2012. Pettit

requested documents relating to his fall, which the Government withheld on the basis of a

privilege created by 38 U.S.C. § 5705. Pettit filed a motion to compel, which the Magistrate Judge denied, prompting this appeal. The Government claims that the documents are privileged because they are quality assurance documents. Pettit argues that the Government is abusing the privilege to shield fact witnesses. Pettit states he needs the documents because the witnesses the Government has identified have forgotten important facts and he believes the contemporaneous witness statements may reveal both forgotten facts and additional undisclosed witnesses.

As noted in the order denying the motion to compel, the first document is titled "Patient Fall Report" and is described as "containing the report of Harold Pettit's fall on June 8, 2012 prepared by two medical professionals who assisted Harold Pettit during the shift in which Harold Pettit fell." The second document is described on the privilege log as a "'Report of an Adverse Event,' containing an aggregate summary of the events surrounding Harold Pettit's fall on June 8, 2012 prepared by medical professionals not involved with Harold Pettit's care based on medical records and interviews with medical professionals who assisted Harold Pettit after his fall." The remaining documents are retrospective critical assessments of the circumstances surrounding Plaintiff's fall and are based on the factual information contained in the Patient Fall Report and interviews conducted for the Report of an Adverse Event. Pettit has requested disclosure of only the first two documents, either in whole or in redacted form, as he believes that the withheld documents may contain facts and witness names that have not otherwise been provided in his medical records.

38 U.S.C. § 5705, which creates the quality-assurance privilege, provides: "Records and documents created by the Department [of Veterans Affairs] as part of a medical quality-assurance program . . . are confidential and privileged and may not be disclosed to any person or entity

except" in specific circumstances. 38 U.S.C. § 5705(a). It defines a "medical quality-assurance program" as "a Department systematic health-care review activity designated by the Secretary to be carried out by or for the Department for [the purpose of improving the quality of medical care or improving the utilization of health-care resources in Department health-care facilities]." 38 U.S.C. § 5705(c)(2). The statute also instructs the VA Secretary to create regulations to implement the statute, including specifying which types of VA activities constitute medical quality-assurance programs under the statute. 38 U.S.C. § 5705(d)(1).

The implementing regulations create four classes of "healthcare quality assurance review" activities that are designated as medical quality-assurance programs. 38 C.F.R. § 17.501(a). The relevant class is "*Monitoring and evaluation reviews conducted by a facility*", which includes a subclass of *"Reports of special incidents (VA Form 10–2633 or similar forms) and follow-up documents"*. 38 C.F.R. § 17.501(a)(1). The regulations further delegate authority to the Under Secretary for Health, regional directors, and facility directors to describe, in advance and in writing, the specific quality assurance activities that fall into the four classes created by the regulations. 38 C.F.R. § 17.501(b). At the individual facility level, each facility director can specify those activities in a written facility policy document. *Id*.

The Government relies on two policy documents that were created by the director of the JBVAMC to specify the quality assurance activities that fall into the four classes created by the regulations. In a declaration, the current Director states that the disputed documents, the Patient Fall Report and the Report of an Adverse Event, were produced as part of a *Adverse Event and Close Call Reporting* review. According to Memorandum 00-68-15, *Adverse Event and Close Call Reporting* activities fall into the "*Monitoring and evaluation reviews conducted by a*

*facility"* class of medical quality-assurance programs created by the regulations. The Memorandum explicitly states that *Adverse Event and Close Call Reporting* activities include the creation of *Patient Incident Reports*, fact-based incident report that must be submitted whenever an employee becomes aware of "incidents involving patients that cause harm or have the potential for causing harm."

The goal of the VA's medical quality-assurance programs is to improve care at VA facilities by facilitating frank, critical peer review of that care. *See* S. Rep. No. 96-876, at 31 (1980) (stating that quality assurance programs have "had significant beneficial impact on the quality of health-care provided in the VA facilities by acting as a continuing check on such health care"). The quality-assurance privilege recognizes that meaningful quality-assurance peer review would be impossible if critical opinions were subject to disclosure to former patients who might use the opinions against the VA in litigation. *See* S. Rep. No. 96-876, at 31 (1980) (providing that Congress created the privilege because it was "concerned that, unless the physicians and other health professionals participating in the program can be assured that their remarks and evaluations . . . will be kept confidential, the necessary level of candor will be lost"); *Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1062 (N.D. Ill. 1981) (stating, in discussing an analogous state-law privilege that "[c]onstructive professional criticism cannot occur in an atmosphere of apprehension that one doctor's suggestion will be used as a denunciation of a colleague's conduct in a malpractice suit.")

In deciding the motion to compel, the Magistrate Judge noted that the VA privilege is statutory, not judicially-created or subject to refinement by the courts over the years, and the authors of 38 U.S.C. § 5705 and the corresponding regulations and facility policies have already

considered these competing interests. The fact that the regulations and VA policy explicitly include *Patient Incident Reports*, which will by their nature be primarily factual, indicates that the VA determined, in exercising its discretion provided by Congress, that the value of the privilege in promoting critical analysis of its care outweighs the potential that the privilege will be abused to hide facts. The Magistrate Judge then declined to second-guess that determination and denied the motion to compel.

On appeal, the Government indicated, *inter alia*, that Pettit had received all the information he requested by way of other documents that were produced. The Government has advised the court that it has provided Pettit with thousands of pages of documents, and withheld only 40 pages of privileged quality assurance records. As noted earlier, this court granted Pettit's motion for *in camera* review of the withheld documents. The court also directed the Government to submit to the court the documents the Government asserted provided equivalent information to Pettit. The court has now carefully reviewed all the documents submitted by the Government. Although Pettit seems concerned that the Government is hiding fact witnesses, there is no evidence of this in the documents provided. The documents simply do not lists names of witnesses, other than the persons of which Pettit is already aware. As the documents are quality assurance review documents, they emphasize the facts as known to the VA hospital, and do not discuss specific nurses or doctors and what they did or did not do with respect to Pettit's fall. Nor are the facts detailed with any more specificity than in the documents already submitted to Pettit. Hence the court agrees with the Government that the records already disclosed to Pettit are equivalent to the records he seeks to compel. Accordingly, the court will affirm the Magistrate Judge's denial of the motion to compel.

<u>Conclusion</u>

On the basis of the foregoing, the decision of the Magistrate Judge denying Pettit's

motion to compel, is hereby AFFIRMED.


 Entered: June 10, 2015.


s/ William C.  Lee
William C. Lee, Judge
United States District Court
