UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| HAROLD PETTIT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 2:13cv253 |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court on a Motion for Fees, filed by the plaintiff, Harold Pettit ("Pettit") , on June 9, 2015. The defendant, United States of America ("Government"), has not filed a reply. Rather, on June 26, 2015, the Government filed a Motion for Reconsideration of this Court's June 8, 2015 Order granting Pettit's Motion for Sanctions. Pettit responded to the Motion for Reconsideration on July 9, 2015, to which the Government replied on July 27, 2015.

Also on July 27, 2015, Pettit filed a request for oral argument, to which the Government responded on this same date.

For the following reasons, the Motion for Reconsideration will be granted and the Motion for Fees and Motion for Oral Argument will both be denied.

Discussion

On June 8, 2015, this court entered an Order which held, in part, that Pettit's motion for sanctions was well-taken. The basis of the motion for sanctions was the fact that the Government interviewed Dr. Patrick J. Barrett, one of Pettit's treating physicians at the VA hospital in which Pettit was a patient. During this interview, the Government obtained an opinion about Pettit's damages that is adverse to Pettit's position in this case. Pettit argued that the interview was contrary to the substantive law of Illinois and subject to sanction, pursuant to the *Petrillo*

doctrine. *Petrillo v. Syntex Labs, Inc.*, 499 N.E.2d 952, 957 (Ill. App. Ct. 1986). The Government took the position that the *Petrillo* doctrine did not apply because the Court should apply Indiana law. After conducting a choice of law analysis, this Court determined that Illinois law (including the *Petrillo* doctrine) applied, and granted Pettit's motion for sanctions. The Court tailored the sanction to restrict "Dr. Barrett's testimony such that he will not be permitted to testify in any way about Pettit's requirement for total care in a nursing home environment." Order at 4. The Court also granted Pettit's request for costs and fees incurred in bringing the motion for sanctions. *Id*.

The Government has now requested that the Court reconsider its Order granting sanctions and fees. The Government states that because its counsel "neglected to brief issues other than the choice of law issue, the Court did not have the opportunity to consider the facts and law presented in support of this motion..." Government counsel indicates that he "was over-confident that he would prevail on the choice of law issue", and thus neglected to research and develop the facts and law which the Government now requests the Court to consider.

Pettit, not surprisingly, has objected to the motion to reconsider, noting that such a motion is not officially "on the books". Pettit further argues that even if there were such a motion, the Government has failed to show that it is entitled to such a remedy, as its current position is its own fault for being overconfident in the first place. Pettit's position, although understandable, neglects to take note of this Court's long-standing practice of always, whenever possible, deciding the issues on the merits. Moreover, pretrial orders determining what evidence may be introduced at trial, such as the June 8, 2015 Order, are always interlocutory and subject to reconsideration. *Belmont v. The Erie Ry Co.*, 52 Barb. 637 (N.Y. Sup. Ct. 1869)(J. Cardozo);

2

*United States Sec and Exch. Comm'n v. Berrettini*, No.1:10cv1614, 2015 WL 424776 at *3 (N.D. Ill. July 14, 2015). As the Government's motion to reconsider raises important issues that need to be correctly decided, the court will entertain those issues now.

The first issue raised by the Government is whether federal law provides that there is no federal physician-patient privilege. Pursuant to the Federal Tort Claims Act (FTCA), United States District Courts "have exclusive jurisdiction of civil actions on claims against the United States for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission" of the United States and its agencies and employees. 28 U.S.C. § 1346(b)(1); *see* 28 U.S.C. § 2679; *see Osborn v. Haley*, 549 U.S. 225, 229-31 (2007). For non-diversity cases such as this FTCA case, "[f]ederal common law implements the federal Constitution and statutes, and is conditioned by them." *D'oench Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 471-72 (1942). In FTCA cases such as this one, the Seventh Circuit has held that for *substantive* issues the applicable state law applies; but for *procedural* issues, the Court is required to apply federal common law. *Gipson v. United States*, 631 F.3d 448, 451 (7th Cir. 2011); *Arpin v. United States*, 521 F.3d 769, 776-77 (7th Cir. 2008); *Jutzi-Johnson v. United States*, 263 F.3d 753, 759-60 (7th Cir. 2001).

The Government argues that evidentiary privileges, such as the alleged physician-patient privilege at issue in this motion, are governed by the procedural rules of evidence, which in this case is Fed. R. Evid. 501, which "makes federal common law the source of any privileges in federal-question suits unless an Act of Congress provides otherwise." *Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 926 (7th Cir. 2004) (holding that "there is no federal common law physician-patient privilege"). The Government points out that many FTCA cases specifically have held that, as a

3

procedural rule of evidence, federal common law, and not state law, determines what privileges apply in an FTCA case. *Tucker v. United States*, 143 F. Supp.2d 619, 624 (S.D. W. Va. 2001); *Syposs v. United States*, 179 F.R.D. 406, 410-11 (N.D.N.Y. 1998); *Galarza v. United States*, 179 F.R.D. 291, 293 (S.D. Cal. 1998); *Menses v. United States Postal Serv.*, 942 Fed. Supp. 1320, 1323-24 (D. Nev. 1996); *Young v. United States*, 149 F.R.D. 199, 204 (S.D. Cal. 1993).

In *Tucker*, for example, one of the defendants, Raleigh General Hospital, sought to withhold certain medical records and information as privileged pursuant to West Virginia law. 143 F. Supp. at 620-21. The Court observed that Fed. R. Evid. 501 governs the determination of whether state or federal privilege law applies in FTCA cases. *Id.* at 621-22. The Court quoted legislative history addressing the United States Department of Justice proposal that federal privilege law should apply to Federal Tort Claims Act cases. *Id.* at 623. The quoted language from the Senate-House Conference Report regarding the version of Fed. R. Evid. 501 that ultimately was adopted stated that "[i]n nondiversity jurisdiction civil cases, federal privilege law generally will apply. . . . Thus state law does not supply the rule of decision . . . and state privilege law would not apply." *Id.* (citing Conf. Re. No. 1597, 93rd Cong., 2d Sess. (1974) *reprinted in* 1974 US.C.C.A.N. 7098, 7101). The Court concluded, "Congress was aware of the privilege issue in the context of FTCA cases and clearly stated its intent that Rule 501 requires application of federal privilege rules. . . ." *Id.* (internal quotations and citations omitted). The Court held that federal common law governs privilege issues in Federal Tort Claims Act cases. *Id*. at 623-24.

The Government thus maintains that there is no federal common law physician-patient privilege, citing to *Whalen v. Roe*, 429 U.S. 589, 602 n.28 (1977); *United States v. Bek*, 493 F.3d

790, 801-02 (7th Cir. 2007); *Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 926 (7th Cir. 2004). The Government contends that Pettit's reliance on the Illinois state law decision in *Petrillo* is misplaced. *See Ueland v. United States*, 291 F.3d 993, 999 (7th Cir. 2002) (declaring that the argument of a plaintiff in an FTCA case, relying on *Petrillo*, that a lawyer representing the United States may not contact or communicate with a federal employee physician who provided medical care to the plaintiff "has no support in either state or federal law"). Therefore, concludes the Government, contacts with Dr. Barrett were authorized by the applicable federal common law and no sanctions are warranted for Government counsel's contacts with Dr. Barrett.

Pettit, in response, argues that the Seventh Circuit in *Morisch v. United States*, 653 F.3d 522 (7th Cir. 2011), applied the *Petrillo* rule in a Federal Tort Claims Act (FTCA) case against the United States alleging negligent medical care at a VA facility. However, as the Government points out, in *Morisch* the district court applied *Kentucky law* expressing the majority rule that does not recognize a physician-patient privilege in tort litigation. *Id.* at 528. Plaintiff argued *on appeal* that Illinois law and the *Petrillo* rule applied. *Id.* Without deciding which state's law applied, or if the *Petrillo* rule appropriately should be applied to an FTCA case, the Seventh Circuit observed that a non-federal defendant had allegedly violated the *Petrillo* rule and that the United States should not be penalized for the violation. *Id.* Additionally, the Court found that the alleged violation of the *Petrillo* rule by a non-federal defendant did not prejudice plaintiff's claims against the United States. *Id*. Clearly, the Seventh Circuit in *Morisch* did not address, much less decide, the issue of whether or not the *Petrillo* rule applies in FTCA litigation against the United States.

In FTCA cases, the Seventh Circuit has held that the federal courts are merely borrowing

5

or absorbing state substantive law, but are not required to follow state law, if the rule of decision is really procedural. *Jutzi-Johnson v. United States*, 263 F.3d 753, 759-60 (7th Cir. 2001) (holding that the Illinois rule that trial and appellate courts may not consider comparable awards in similar tort cases when determining the amount of damages to award to a plaintiff was procedural and did not bind federal courts); *Ueland v. United States*, 291 F.3d 993, 999 (7th Cir. 2002) (holding that the *Petrillo* rule is not substantive and is "not absorbed into federal law by [the FTCA, 28 U.S.C.] §§ 1346(b), 2674"). The Seventh Circuit applied that principle in *Ueland* in which a plaintiff sought to impose sanctions on the United States for private communications with a federal employee staff physician. *Id*. at 998. The Court noted the administrative and operational impracticality of prohibiting federal attorneys and administrators from privately speaking with federal employee physicians. *Id.* at 999. The Court declared that private communications between federal employee physicians and federal attorneys and administrators are "entirely legitimate." *Id.* The Court concluded that federal law should govern how federal attorneys and administrators interact with their physician employees. *Id.* The Court held that the *Petrillo* rule would not be absorbed into federal law, and would not apply, in FTCA cases. *Id*.

Dr. Barrett is a federal employee physician who treats patients at the Jesse Brown VA Hospital. As in *Ueland*, in this FTCA case counsel for the United States was and is authorized to speak privately with federal employee physicians regardless of contrary Illinois law in *Petrillo*. This court now holds that Government counsel's contacts with Dr. Barrett were authorized by the applicable federal common law and not subject to sanctions.

The Government also argues that its counsel's communications with Dr. Barrett did not violate the *Petrillo* doctrine because Pettit gave counsel prior written authorization for the

6

communications. The government states that "because of inadvertence" both parties failed to inform the Court that on October 13, 2013, Pettit's son and personal representative who had power-of-attorney signed a Patient Authorization to Release Medical Information ("Patient Authorization"). The Patient Authorization stated that "[c]ommunications between provider and any representative of the U.S. Attorney's Office/Department of Justice are authorized." The Patient Authorization further describes a "provider" as "[a]ny medical service provider." The Patient Authorization was mailed to Government counsel under cover of a letter dated October 19, 2013, and signed by Raymond J. Hafsten, Jr., counsel for Pettit. Government counsel had his first contact with Dr. Barrett during April 2014. Pettit then deposed Dr. Barrett on June 24, 2014.

The Government notes that Pettit's motion for sanctions relies exclusively on Illinois' policy expressed in *Petrillo*. In *Petrillo*, the trial court fined Syntex's attorney the sum of $1.00 for notifying the court that he intended to violate the court's order prohibiting private communication with plaintiff's treating physician without the plaintiff's prior consent. *Id.* The appellate court specifically noted, however, that defense counsel may conduct such private communications with plaintiff's treating physician if there is "express consent (*e.g.* a written waiver)." *Id.* at 959. The Government argues that, unlike *Petrillo*, counsel for the United States obtained Pettit's express written consent before April 2014 when he began communicating with Dr. Barrett.

Pettit, in response, argues that the Patient Authorization applies only to non-VA medical records and does not authorize oral communications between Government counsel and the VA staff physicians who treated Pettit. However, as the Government points out, the structure and express language of the Patient Authorization authorizes any form of communications and is not

7

limited to medical records. The Patient Authorization is addressed to "*any* medical service provider." (emphasis added). The top of the first page of the Patient Authorization specifies a non-inclusive list of medical records that plaintiff authorizes the medical service provider to release. Additionally, toward the bottom of the first page of the Patient Authorization is a separate section entitled "Other Conditions." The second "other condition" states that "communications between provider and any representative of the U.S. Attorney's Office/Department of Justice are authorized.". Clearly, the Patient Authorization expressly authorizes any communications, including oral communications, between any medical service provider and counsel for the United States. In *Petrillo*, the court specifically held that defense counsel may privately communicate with plaintiff's treating physician if there is "express consent (*e.g.* a written waiver)." *Id.* at 959. Because the Patient Authorization in this case authorized such communications, the Government never violated the *Petrillo* doctrine, and sanctions are not warranted for communications with Dr. Barrett to which Pettit gave his express written consent.

Finally, the Government contends that its counsel's communications with Dr. Barrett were authorized by a statutory exception to the *Petrillo* doctrine in Illinois' Hospital Licensing Act. The Government relies on *In re: Medical Malpractice Cases Pending in the Law Division* (*In re: Medical Malpractice Cases*), 787 N.E.2d 237, 244 (Ill. App. Ct. 2003), which discusses Illinois' Hospital Licensing Act (HLA) exception to the *Petrillo* doctrine. In that case, the court discussed the HLA, which provides that:

> "[T]he hospital's medical staff members and the hospital's agents and employees may communicate, at any time and in any fashion, with legal counsel for the hospital concerning . . . any care or treatment they provided or assisted in providing to any patient within the scope of their employment or affiliation with

the hospital."

*Id.* at 241 (citing Ill. Comp. Stat. Ch. 85, § 6.17(c)). The court referred to medical staff members of hospitals whose treatment was not alleged to be the cause of any of a plaintiff's injuries, such as Dr. Barrett in this case, as "non-Morgan health care providers." *Id*. at 239. Relying on the Illinois' Supreme Court case of *Burger v. Lutheran General Hospital*, 759 N.E.2d 533 (Ill. 2001), the court rejected the argument that communications allowed by the HLA violate the *Petrillo* doctrine. *Id.* at 242 (quoting *Burger,* 787 N.E.2d at 555). The court reaffirmed that the communications authorized by the HLA "do not unreasonably invade a hospital patient's right to privacy." *Id*. at 243 (quoting Burger, 787 N.E. 2d at 553). The court further explained that communications authorized by the HLA are authorized both before and after a lawsuit is filed, observing that "if the hospital may access this patient's information before litigation ensues because it is hospital information, it remains hospital information after the initiation of litigation." *Id*. at 244 (quoting *Burger*, 787 N.E.2d at 555). The court held that "after a medical negligence case has been filed against a hospital, the defendant's hospital counsel . . . may communicate *ex parte* with the plaintiff's non-Morgan health care providers who, in the course of their employment or affiliation with the defendant hospital provided or assisted in providing care or treatment to the plaintiff." *Id*.; *see also Ueland v. United States*, 291 F.3d 993, 999 (7th Cir. 2002) (declaring that "[w]e doubt that *Petrillo* had in mind a situation where the plaintiff's physician is the defendant's *employee* (in *Petrillo* there was no affiliation between the physician and the adverse party). How could a court demand that the Bureau of Prisons have no contact with its staff physicians, or even that federal lawyers not talk with federal physicians (who may be needed as witnesses in many cases pending simultaneously)?").

In the present case, Dr. Barrett is a hospital physician who treated plaintiff while he was

9

hospitalized at Jesse Brown VA Hospital. As in *In re*: *Medical Malpractice Cases*, Dr. Barrett is a non-Morgan health care provider whose treatment is not alleged to be the cause of plaintiff's injuries. Government counsel for defendant is the Jesse Brown VA Hospital attorney who communicated with Dr. Barrett, a hospital physician, as authorized by the HLA. Thus, as in *In re*: *Medical Malpractice Cases*, Government counsel's communications with Dr. Barrett were authorized by the HLA, which is an exception to the *Petrillo* doctrine.

Without discussing the Hospital Licensing Act or *In re*: *Medical Malpractice Cases*, Pettit provides this Court with random out-of-context quotes from two medical malpractice cases and one automobile accident case against non-hospital defendants that neither cited nor discussed those authorities. *See Aylward v. Settlecase*, 948 N.E.2d 769, 769 (Ill. App. Ct. 2011) (medical malpractice case against a physician practice group); *Moss v. Amira*, 826 N.E.2d 1001, 1003 (automobile accident case against a motorist); *Kirkland v. Siglove*, No. 11 C 7285, 2013 WL 707917 at *1 (N.D. Ill. Feb. 26 2013) (medical malpractice case against a physician practice group).

This court holds that, as in *Ueland*, communications by the attorney for the United States with Dr. Barrett regarding this case were authorized by both state and federal law. Moreover, as in *In re*: *Medical Malpractice Cases*, defense counsel's communications with Dr. Barrett were authorized by the Hospital Licensing Act, which is an exception to the *Petrillo* doctrine. Accordingly, upon reconsideration of the June 8, 2015 Order granting Pettit's motion for sanctions, the court will grant the motion and will permit Dr. Barrett to testify as an expert at trial regarding issues related to Pettit's requirement for total care in a nursing home. The court further releases the Government from any obligation to pay Pettit's attorney's fees for the preparation of his motion for sanctions and supporting briefs. However, the court is mindful of

the fact that it is Government counsel's lack of diligence that created the need for the motion to reconsider. Thus, the question arises as to whether the Court should grant attorney fees to Pettit, for the time spent responding to the motion to reconsider. The Court understands that, as detailed in footnote one of the Government's brief in support of the motion to reconsider, Government counsel discussed the possibility of the motion with Pettit's counsel and requested a stipulation to resolve the issues that would be raised in the motion. Pettit's counsel refused to stipulate. Nevertheless, the Court will grant fees to Pettit's counsel because stipulating to the opposite of what he had already won in the June 8, 2015 Order would have quite possibly created ill-will with his client. One can easily surmise how Pettit's counsel would have considered it better to brief out the motion and let the chips fall where they may, rather than to negotiate a stipulation.

## Conclusion

On the basis of the foregoing, the Government's motion to reconsider [DE84] is hereby GRANTED. Further Pettit's Motion for Fees [DE 81] and Motion for Hearing [DE 91] are both hereby DENIED. Pettit's counsel is to submit his fee petition (detailing costs of responding to the motion to reconsider) to Government counsel within 30 days of the date of this Order.

Entered: August 31, 2015.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court